

<u>1612701</u>

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF NEW YORK
# PROBATION OFFICE

## MEMORANDUM

TO:       Honorable Paul A. Engelmayer
            U.S. District Judge

FROM:   Stephanie Dunne
            U.S. Probation Officer

RE:       Marshall, Jordan
            DKT. #  15 CR 521-01 (PAE)

DATE:   April 11, 2016

Attached is the Presentence Investigation report, including the recommendation and addendum, prepared on March 14, 2016 , on the above-named individual, who is scheduled for sentencing on May 2, 2016.  Based on objections to the PSI and/or information received after the draft report was disclosed, the attached PSI has been revised as indicated in the addendum.

                           Respectfully submitted,

                           Michael J. Fitzpatrick
                           Chief U.S. Probation Officer

By:                        
                           Stephanie Dunne
                           U.S. Probation Officer
                           212-805-5053

cc:  Megan Wolfe Benette, Esq. ,     (with attachment)
     Robert W. Allen , AUSA        (with attachment)

P1612701

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

### PRESENTENCE INVESTIGATION REPORT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **Docket No.: 0208 1:15CR00521-001 (PAE)** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **Jordan Marshall** | ) | **Sentence Date: 05/02/2016** |
| | ) | |

**Prepared for:**  Honorable Paul A. Engelmayer
U.S. District Judge

**Prepared by:**  Stephanie M. Dunne, USPO
212-805-5053
Stephanie_Dunne@nysp.uscourts.gov

**Assistant U.S. Attorney**
Robert W. Allen
1 St. Andrew's Plaza
New York, NY 10007
(212)-637-2216
robert.allen@usdoj.gov

**Defense Counsel**
Megan Wolfe Benett, Esq.
750 Third Avenue
New York, NY 10017
(212) 973-3406
mbenett@kreindler.com

**Offense:**  <u>Ct. 1</u>: Conspiracy to Distribute and Possess with Intent to Distribute Crack; 21 USC 841(b)(1)(C) and 846 (Class C Felony)

Not more than 20 years' imprisonment/minimum of 3 years' supervised release up to life/maximum of a $1,000,000 fine/$100 special assessment

**Release Status:**  Arrested on 5/29/15, and released on the same day on a $50,000 PRB co-signed by 1 FRP (plus one for moral suasion); travel restricted to SDNY and EDNY; surrender of all travel documents with no new applications; strict pretrial supervision to include drug testing/treatment; and a special condition that the defendant be required to seek/maintain employment or attend school.  Defendant remanded following guilty plea on 1/19/16.

**Codefendants:**  Lawrence Lewis (P1755761/S. Dunne)

**Related Cases:**  Gene Rodriguez (P1510971/J. Bressor)

**Date Report Prepared:** 3/14/16      **Date Report Revised:** 4/11/16

## Identifying Data:

| | |
|---|---|
| **Date of Birth:** | April 6, 1995 |
| **Age:** | 20 |
| **Race:** | Black or African American |
| **Hispanic Origin:** | Non-Hispanic origin |
| **Sex:** | Male |
| **SSN#:** | 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 |
| **FBI#:** | 894350ND6 |
| **USM#:** | 92388-054 |
| **State ID#:** | 11786676L |
| **Education:** | Graduate Equivalency |
| **Dependents:** | 0 |
| **Citizenship:** | U.S. Citizen |
| **Address:** | 700 Lenox Avenue |
| | Apartment #26L |
| | New York, New York 10039 |



**Alias(es):**  "J.O.;" "Jordan Maxwell Marshall" (true name)

*Restrictions on Use and Redisclosure of Presentence Investigation Report.* Disclosure of this presentence investigation report to the Federal Bureau of Prisons and redisclosure by the Bureau of Prisons is authorized by the United States District Court solely to assist administering the offender's prison sentence (i.e., classification, designation, programming, sentence calculation, pre-release planning, escape apprehension, prison disturbance response, sentence commutation, or pardon) and other limited purposes, including deportation proceedings and federal investigations directly related to terrorist activities. If this presentence investigation report is redisclosed by the Federal Bureau of Prisons upon completion of its sentence administration function, the report must be returned to the Federal Bureau of Prisons or destroyed. It is the policy of the federal judiciary and the Department of Justice that further redisclosure of the presentence investigation report is prohibited without the consent of the sentencing judge.

Marshall, Jordan                    3              P1612701 - Dunne, Stephanie

## PART A. THE OFFENSE

### Charges(s) and Conviction(s)

1.   One-count Indictment 15 CR 521 (PAE) was filed in the Southern District of New York on August 6, 2015.  It charged that from at least March 2015 through April 2015, in the Southern District of New York and elsewhere, **JORDAN MARSHALL**, a/k/a "J.O.," LAWRENCE LEWIS, a/k/a "MGZ," and others conspired to distribute and possess with the intent to distribute crack, in violation of 21 USC 841(a)(1) and 841(b)(1)(C).

(21 USC 846)

2.   <u>Forfeiture Allegation</u>:  As the result of committing the offense alleged in <u>Count 1</u>, **MARSHALL** and LEWIS shall forfeit to the U.S., pursuant to 21 USC 853, all property that constituted or was derived from proceeds traceable to the commission of the offense.

(21 USC 853)

3.   On January 19, 2016, **JORDAN MARSHALL** appeared before the Honorable Paul A. Englemayer and pleaded guilty as charged, pursuant to a written plea agreement which stipulated as follows:

a) The November 1, 2015, edition of the <u>Guidelines Manual</u> is applicable.

b) Pursuant to §2D1.1(a)(5) and (c)(8), the base offense level is 24 because the defendant conspired to distribute and possess with intent to distribute between 28 and 112 grams of crack.

c) Assuming the defendant, in a timely manner, clearly demonstrates acceptance of responsibility to the satisfaction of the Government, through his allocution and subsequent conduct prior to the imposition of sentence, a three-level reduction will be warranted, pursuant to §3E1.1(a) and (b).

d) In accordance with the above, the applicable offense level is 21.

e) Based upon the information now available to the Government (including representations by the defense), the defendant has no criminal history points and a corresponding Criminal History Category of I.

f) Based upon the calculations set forth above, the defendant's stipulated sentencing Guidelines range is 37 to 46 months' imprisonment.  In addition, after determining the defendant's ability to pay, the Court may impose a fine, pursuant to §5E1.2.  The applicable fine range is $15,000 to $1,000,000.

g) The parties have also stipulated that the defendant admits to the forfeiture allegation contained in the Indictment.

Marshall, Jordan                                4                    P1612701 - Dunne, Stephanie

4.      Sentencing is scheduled for May 2, 2016.

**Status of Codefendants**

5.      On January 5, 2016, LAWRENCE LEWIS (P1755761/S. Dunne) appeared before the Honorable Paul A. Englemayer and pleaded guilty as charged in <u>Count 1</u> of Indictment 15 CR 521-02 (PAE).  Sentencing is scheduled for April 15, 2016.

**Related Case**

6.      On August 4, 2015, Gene Rodriguez (P1510971/J. Bressor) pleaded guilty as charged in <u>Count 1</u> of superseding felony Information S1 15 CR 305 (VSB) [Conspiracy to Distribute and Possess with Intent to Distribute Crack], before the Honorable Vernon S. Broderick.  Sentencing is scheduled for April 4, 2016.

**Adjustment to Pretrial Supervision**

7.      According to information furnished by the defendant's former supervising U.S. Pretrial Services Officer Joseph Perry, Marshall was entirely non-compliant with the conditions of his supervision, thereby leading to the issuance of three violation memos prior to his ultimate remand.  The defendant initially failed to report as directed on five separate occasions and tested positive for marijuana and cocaine multiple times.  After being referred to out-patient treatment at Daytop Village on August 19, 2015, Marshall failed to report to mandatory treatment sessions on eight occasions and was discharged for non-compliance.  The defendant also tested positive for marijuana and cocaine during this time period, and failed to report to Pretrial Service for a random drug test.

8.      Officer Perry first advised the Court of the defendant's non-compliance in a violation memo dated October 6, 2015.  Marshall was subsequently referred to in-patient treatment at Samaritan Village, and was discharged on November 6, 2015.  He was then directed to report to Pretrial Services for placement into an out-patient program, but continued to test positive for cocaine.  A second violation memo dated December 8, 2015, was submitted to the Court, and following a hearing that took place on December 14, 2015, Marshall continued a pattern of non-compliance while on supervision.  Specifically, the defendant failed to report to Pretrial Services as directed, failed to attend mandatory drug treatment, and continued to test positive for cocaine.  A third violation memo dated January 12, 2016, was submitted to the Court.  Marshall was ultimately remanded at the time of his guilty plea on January 19, 2016.

**Adjustment to Incarceration**

9.      According to information furnished by the U.S. Bureau of Prisons, the defendant has been incarcerated at MCC New York since January 19, 2016, and he has not committed any known disciplinary infractions to date.

Marshall, Jordan                    5                    P1612701 - Dunne, Stephanie

### The Offense Conduct

10.  The following investigation was conducted by DEA agents with the aid of a cooperating witness (CW), who had previously purchased quantities of cocaine from Gene Rodriguez on multiple occasions. Additionally, between March 9, 2015, and April 17, 2015, the CW and Rodriguez had multiple recorded telephone conversations regarding the purchase and sale of crack using coded language.

11.  On March 9, 2015, the CW contacted Rodriguez and stated that he wanted to purchase 50 grams of crack. Rodriguez told the CW that he would contact a source of supply and connect that individual to the CW. Later that day, the CW met with **JORDAN MARSHALL** in the vicinity of West 145th Street and Lenox Avenue in New York, NY. Prior to the meeting, law enforcement agents provided the CW with approximately $2,450, which the CW used to purchase approximately 50 grams of crack from **MARSHALL**.

12.  On April 17, 2015, the CW contacted Rodriguez and stated that he wanted to purchase approximately 20 grams of crack. Rodriguez informed the CW that he would have to go through a different supplier, namely LAWRENCE LEWIS. Rodriguez asked the CW for a cut of the profit that the CW expected to make on the proposed drug deal. The CW informed Rodriguez that he expected to earn $100 on the transaction, of which he offered to give Rodriguez $50. Later that day, the CW met with LEWIS in the vicinity of West 145th Street and Lenox Avenue in New York, NY. Prior to the meeting, law enforcement agents provided the CW with approximately $1,000, which he used to purchase approximately 20 grams of crack from LEWIS.

13.  Due to the ongoing investigation, Rodriguez was not arrested until April 30, 2015.

14.  **MARSHALL** was arrested on May 29, 2015.

15.  LEWIS was arrested on July 7, 2015.

16.  According to the Government, LEWIS is responsible for conspiring to distribute and possess with intent to distribute 20 grams of crack and **MARSHALL** is responsible for 50 grams of crack. Additionally, Rodriguez was determined to be responsible for the distribution of approximately 75 grams of crack.

### Adjustment for Obstruction of Justice

17.  The probation officer has no information indicating the defendant impeded or obstructed justice.

### Adjustment for Acceptance of Responsibility

18.  On the advice of defense counsel, Marshall declined to make a statement regarding his involvement in the instant offense during the presentence interview.

Marshall, Jordan                    6                    P1612701 - Dunne, Stephanie

19.   A copy of the defendant's plea allocution has been requested from the Government; however, it has not been furnished to the Probation Office to date.

**Offense Level Computation**

20.   The 2015 <u>Guidelines Manual</u>, incorporating all guideline amendments, was used to determine the defendant's offense level, pursuant to §1B1.11.

      <u>Ct. 1</u>: Conspiracy to Distribute and Possess with Intent to Distribute Crack; 21 USC 841(b)(1)(C) and 846

21.   **Base Offense Level:** The guideline for a violation of 21 USC 846 is found in §2D1.1, which provides for a base offense level of 24 because the defendant conspired to distribute and possess with intent to distribute 50 grams crack, pursuant to §2D1.1(a)(5) and (c)(8).                                                              **24**

22.   **Specific Offense Characteristics:**  To date, the defendant has not met the fifth criteria for safety valve eligibility.                                                              **0**

23.   **Victim Related Adjustment:** None.                                                              **0**

24.   **Adjustment for Role in the Offense:** None.                                                              **0**

25.   **Adjustment for Obstruction of Justice:** None.                                                              **0**

26.   **Adjusted Offense Level (Subtotal):**                                                              **24**

27.   **Chapter Four Enhancement:** None.                                                              **0**

28.   **Acceptance of Responsibility:** The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels, pursuant to §3E1.1(a).                                                              **-2**

29.   **Acceptance of Responsibility:** The defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the intention to enter a plea of guilty. Accordingly, the offense level is decreased by one additional level, pursuant to §3E1.1(b).                                                              **-1**

30.   **Total Offense Level:**                                                              **21**

## PART B. THE DEFENDANT'S CRIMINAL HISTORY

31.   Available information indicates that the defendant was represented by counsel in all matters resulting in conviction, unless otherwise noted.  (Since 1965, the right to legal representation has been mandated by Article 18-B of the New York State Counties Law.)

Marshall, Jordan                           7                    P1612701 - Dunne, Stephanie

### Juvenile Adjudication(s)

32.   None.

### Adult Criminal Conviction(s)

| Date of Arrest | Conviction/Court | Date Sentence Imposed/Disposition | Guideline | Pts |
|---|---|---|---|---|
| 33. 12/7/12 (Age 17) | Disorderly Conduct/ Bronx Criminal Court, Bronx, NY Dkt. #2012BX069657 | 12/8/12: Pleaded guilty; Sentenced to a 1-year Conditional Discharge and 1 day of community service | 4A1.2(c)(1) | 0 |

According to the NYPD arrest report and criminal complaint, on December 7, 2012, at approximately 9:43 a.m., inside of 875 Morrison Avenue, Bronx, NY, the defendant and a separately charged co-conspirator were observed on the 19th Floor, using a large wrench to remove brass fittings from a fire hose. Marshall and his cohort were then observed on the 15th Floor of the building holding the tool and a bag containing two fittings. Information indicates that the defendant and his co-conspirator were initially observed to be on the roof on a closed-circuit security camera. Court records received confirmed the disposition noted above. It is noted that this arrest and conviction has been sealed and no longer appears in a national criminal records check.

### Criminal History Computation

34.   The total criminal history score is zero. According to the sentencing table in USSG Chapter 5, Part A, a criminal history score of zero establishes a Criminal History Category of I.

### Miscellaneous

35.   According to information furnished by the New York State Department of Motor Vehicles and documentation provided by Marshall, the defendant possesses a non-driver identification card, which was issued on August 3, 2012, and is scheduled to expire on April 6, 2017.

## PART C. OFFENDER CHARACTERISTICS

### Personal and Family Data

36. As verified by documentation furnished by the defendant, Jordan Maxwell Marshall was born on April 6, 1995, in New York, NY, to the consensual union of Roderick Marshall, age 54, and Silbra Benbow, age 53. The defendant's parents reside in a co-op located at 700 Lenox Avenue, Apartment #26L, New York, NY. Marshall's father is an unemployed truck driver who is currently seeking employment, and his mother works at a bank in Manhattan in an unknown capacity. The defendant reported that his parents are in good health.

37. The defendant reported one biological sibling, namely Jaelyn Marshall, age 22, who resides with their parents and is a recent college graduate. The defendant also reported the following paternal half-siblings: Sade Marshall, age 29, who lives in New Jersey and is employed in an unknown capacity; and Michael Marshall, age 27, who resides in Bronx, NY, and is a boxer.

38. Marshall reported a stable childhood, during which time he enjoyed close relationships with his parents and siblings. The defendant stated that while both of his parents worked, in recent years, they have struggled to pay all of the necessary living expenses. As such, Marshall informed that there have been times when he lacked certain basic necessities. The defendant stated that although he was raised in the Christian faith, he did not regularly attend church services. Marshall reported no instances of abuse or neglect.

39. The defendant reported no marital history and he is not currently involved in a romantic relationship. Additionally, Marshall does not have any children.

40. Marshall has been a life-long resident of New York State. From 2000 until his incarceration in January 2016, the defendant resided with his parents and sister at 700 Lenox Avenue, Apartment #26L, New York, NY. Marshall informed that his mother is the sole owner of the co-op, but he was unable to provide information concerning when the property was purchased and whether there is a monthly mortgage payment or maintenance fee.

41. A home inspection was conducted on February 24, 2016, during which time the defendant's father and sister were present. The apartment is located on the 26th Floor of the "Esplinade Gardens" apartment complex, which is equipped with an elevator and a security desk where all visitors are required to sign-in. The residence contains two bedrooms and one bathroom, as well as a combined living room/dining area with access to a terrace and a kitchen. The apartment, from which a view of Yankee Stadium can be seen, appeared to be adequately furnished and well maintained. The defendant's father declined to answer questions regarding the ownership or monthly fees associated with the apartment and directed the Probation Officer to speak with Marshall's mother. Information has been requested from the defendant's mother and is awaited.

42.  Marshall related that his family is aware of his current legal situation and has been emotionally supportive.  The defendant stated that his parents are particularly worried about the outcome of his sentencing.  At the time of the presentence interview, Marshall was awaiting approval of his visitor's list, but stated that he speaks to his family every couple of days by telephone.

43.  The defendant's father was interviewed in-person following the home inspection, during which time he presented as angry at the criminal justice system and appeared to make excuses for his son's poor behavior.  Mr. Marshall believes that the neighborhood in which they reside has contributed to the defendant's legal problems.  Marshall's father described the defendant as a "smart child who lacked discipline."  The defendant's father related that the fact that his son's criminal activity rose to the level of a federal case, has been a shock to their entire family.  Mr. Marshall believes that his son will be a law-abiding citizen upon his release.

**Physical Condition**

44.  The defendant stands 5'10" tall, weighs 163 pounds, and he has brown eyes and black hair.  Marshall wore a mustache and a goatee during the presentence interview, and he exhibited the following tattoos:  the phrase "love, life and loyalty" on his chest; and the initials "MOB" on his left arm, which reportedly stand for the song lyric "money over bitches."  The defendant does not have any scars.

45.  Marshall informed that he was born with a heart murmur and that he occasionally experiences a rapid heartbeat.  The defendant stated that he was under the care of a private cardiologist in Manhattan during 2012, and underwent regular EKGs; however, his parents' subsequently lost their health insurance when they became unemployed during that time and he could no longer see the doctor.  As Marshall could not recall the name or location of his former treatment provider, this information cannot be verified.

46.  The defendant is not presently under the care of a doctor or taking any prescription medication.  Marshall appeared to be healthy based upon outward appearance.

**Mental and Emotional Health**

47.  During 2012, the defendant was reportedly diagnosed with depression following a psychological evaluation conducted at St. Luke's Roosevelt and Mount Sinai Hospital, located in New York, NY.  Marshall explained that he was taken to the hospital by a school counselor after reporting that he felt apathetic, withdrawn, and upset for no particular reason that he could articulate.  The defendant stated that while he was not prescribed any medication, he was directed to follow-up with mental health treatment, but never did.

Marshall, Jordan                         10                    P1612701 - Dunne, Stephanie

48.     Marshall displayed an overall poor attitude, and appeared unforthcoming and disrespectful at times during the presentence interview. The defendant admitted that he is experiencing depression as a result of his current legal situation, but stated that he does not want to discuss his feelings with a counselor at MCC.

49.     While incarcerated at MCC, the defendant spends his free time reading the Bible. Marshall advised that he also plans to start going to the law library in order to complete self-study classes. The defendant does not have a work assignment at the correctional facility.

**Substance Abuse**

50.     The defendant admittedly first smoked marijuana with friends at the age of 13 in 2008, and continued to use it almost daily until his remand in January 2016. Marshall admittedly smoked marijuana while being tested by Pretrial Services. He related that marijuana produced a calming effect.

51.     From 2013 until his remand in January 2016, Marshall took illegal prescription painkillers in the form of Percocet (10mg) every two days, which he purchased "on the street." The defendant was unable to pinpoint what prompted his use of painkillers, but related that they caused him to feel calm and mellow.

52.     From 2015 until his remand in January 2016, the defendant also snorted cocaine approximately three times per week. The defendant explained that he tried cocaine out of curiosity and admittedly tested positive while on pretrial supervision. Marshall related that while cocaine occasionally caused him to feel alert and awake, it almost always produced a calming effect.

53.     Additionally, Marshall reported that he occasionally consumed alcohol while socializing with friends. The defendant stated that he typically drank up to two beverages containing dark liquor per event, and he denied any prior history of excessive alcohol consumption.

54.     As corroborated by information furnished by U.S. Pretrial Services, from September 2015 to October 2015, and again from November 2015 to January 2016, the defendant was directed to attend out-patient substance abuse treatment at Daytop Village, Inc., located at 500 8th Avenue, New York, NY. Marshall admitted that he was referred for treatment after testing positive for drugs on multiple occasions, and was directed to attend group counseling sessions several times per week. According to information furnished by Pretrial, the defendant failed to attend treatment as directed and continued to use drugs. According to records subsequently received from the facility, Marshall was admitted to treatment on August 25, 2015, but only attended four sessions on a sporadic basis; a discharge plan could not be effected due to his non-compliance. The defendant was ultimately discharged on September 8, 2015, after failing to remedy his behavior or "demonstrate change."

Marshall, Jordan                              11                    P1612701 - Dunne, Stephanie

55.    As corroborated by information furnished by U.S. Pretrial Services, from October 2015 to November 7, 2015, the defendant was directed to attend in-patient substance abuse treatment at Daytop Village, Inc., located at 88 Fox Hollow Road, Rhinebeck, NY.  Marshall admitted that he was referred for in-patient treatment after continuing to test positive for drugs and failing to comply with out-patient treatment. While the defendant appears to have completed the program and remained sober for several weeks following his discharge, he ultimately resumed using drugs in December 2015.  Additional treatment records have been requested and are awaited.

56.    Marshall related that using drugs was a conscious choice that he made and that he "liked doing it."  The defendant explained that drugs assuaged his depression and anxiety, and made him "feel better."  As the defendant is incarcerated, a urinalysis was not conducted.

**Educational, Vocational and Special Skills**

57.    As verified by school records, from August 27, 2015, to December 23, 2015, the defendant attended the Borough of Manhattan Community College, located in New York, NY.  The defendant stated that he studied computer science, before being forced to withdraw from the learning institution when he was required to attend an in-patient substance abuse treatment program.  Information indicates that Marshall had a poor scholastic standing and attendance record at the school, and was ultimately place on academic probation on January 4, 2016.

58.    As verified by documentation furnished by the defendant, on December 13, 2013, Marshall was issued a high school equivalency diploma.

59.    As verified by school records, from 2010 to 2013, the defendant attended KIPP New York City College Prep, a high school located in Bronx, NY (formerly Manhattan).  Marshall stated that he completed the 9th through a portion of the 12th grade, before dropping out because he "had a lot going on;" he failed to elaborate or explain that statement further.  The defendant described himself as an average student and stated that he was a member of the school's basketball team.  According to a letter furnished by the school's assistant principal, Marshall "…is a young man trying to find his way with limited resources…with the right support and given his own level of accountability, he can grow from this [legal situation] to be better than before."

60.    From 2006 to 2010, Marshall reportedly attended and graduated from KIPP star Harlem Middle School, located in New York, NY, following completion of the fifth through eighth grades.  School records have been requested and are awaited.

61.    From 2000 to 2006, the defendant reportedly attended and graduated from the Ella Baker Elementary School, located in New York, NY, following completion of kindergarten through the fourth grade.  School records have been requested and are awaited.

Marshall, Jordan                              12                    P1612701 - Dunne, Stephanie

62.  In terms of specialized training or skills, the defendant stated that he was trained in jujitsu during junior high school and rose to the level of a "brown-belt." Marshall related that he enjoyed marital arts and would have liked to continue his involvement, but that it was not offered in high school.   Additionally, the defendant reported that he was planning to join the U.S. Air Force on the date of his arrest, but was ultimately not able to do so.

### Employment Record

63.  As verified by information furnished by defense counsel, from November 8, 2014, to January 5, 2015, the defendant was employed as a temporary stock clerk at a Toys 'R' Us store formerly located in the Times Square section of Manhattan at 220 East 42nd Street, New York, NY, which has since closed.  Marshall informed that he worked the overnight shift and was paid a wage of $8.75 per hour, before being laid-off.

64.  During the summer of 2010, Marshall reportedly earned income through the New York City Department of Youth and Community Development's "summer youth employment program," whose headquarters are located at 2 Lafayette Street, 19th Floor, New York, NY.  The defendant stated that he was tasked with setting up college basketball tournaments and cleaning up park grounds in the vicinity of 66th Street and Amsterdam Avenue in New York, NY, for which he was paid at a rate of $7.25 per hour.  Employment records have been requested and are awaited.

65.  The defendant reported that at all other times, he was financially supported by his parents.

### Financial Condition: Ability to Pay

66.  Marshall reported no assets and he advised of a sole liability of approximately $1,400 owed to the Borough of Manhattan Community College in unpaid tuition. As the defendant is incarcerated, he has no monthly income or expenses.

67.  A check with Equifax revealed no credit history pertaining to the defendant based upon a check of his reported true name, social security number, date of birth and address.

68.  An IRS check for the years 2012 to 2014, has been requested and is awaited.

## PART D. SENTENCING OPTIONS

### Custody

69.  **Statutory Provisions:**   The maximum term of imprisonment is 20 years, pursuant to 21 USC 841(b)(1)(C) and 846.

Marshall, Jordan                          13              P1612701 - Dunne, Stephanie

70.   **Guideline Provisions:** Based upon a total offense level of 21 and a Criminal History Category of I, the guideline imprisonment range is 37 to 46 months.

### Impact of Plea Agreement

71.   None.

### Supervised Release

72.   **Statutory Provisions:** The Court must impose a term of supervised release of at least three years up to life, pursuant to 21 USC 841(b)(1)(C).

73.   **Guideline Provisions:** The guideline term of supervised release is three years, the minimum required by statute, pursuant to §5D1.2(c).

### Probation

74.   **Statutory Provisions:** The defendant is eligible for not less than one nor more than five years' probation because the offense is a Class C Felony, pursuant to 18 USC 3561(c)(1).

75.   **Guideline Provisions:** Since the applicable guideline range is in Zone D of the Sentencing Table, the defendant is ineligible for probation, pursuant to §5B1.1, comment.(n.2).

### Fines

76.   **Statutory Provisions:** The maximum fine is $1,000,000, pursuant to 21 USC 841(b)(1)(C). A special assessment of $100 is mandatory, pursuant to 18 USC 3013.

77.   **Guideline Provisions:** The fine range for this offense is $7,500 to $1,000,000. If the defendant is convicted under a statute authorizing (A) a maximum fine greater than $250,000, or (B) a fine for each day of violation, the Court may impose a fine up to the maximum authorized by the statute, pursuant to §5E1.2(c)(4) and §5E1.2(h)(1).

78.   Costs of prosecution shall be imposed on the defendant as required by statute, pursuant to §5E1.5. In determining whether to impose a fine and the amount of such fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed, pursuant to §5E1.2(d)(7) and 18 USC 3572(a)(6). These costs may include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 16, 2015, provides the following monthly cost data:

Marshall, Jordan                        14                 P1612701 - Dunne, Stephanie

|            | Bureau of Prisons Facilities | Community Correction Centers | Supervision by Probation Officer |
|------------|------------------------------|------------------------------|----------------------------------|
| Daily      | $84.00                       | $79.00                       | $11.00                           |
| Monthly    | $2,552.00                    | $2,417.00                    | $326.00                          |
| Annually   | $30,621.00                   | $28,999.00                   | $3,909.00                        |

## Forfeiture

79. As a result of committing the offense alleged in Count 1 of the Indictment, the defendant shall forfeit to the U.S., pursuant to 18 USC 1963(a)(1), (a)(2), and (a)(3), all property real and personal, involved in the offense or traceable to such property.

80. Pursuant to Rule 32.2, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing. The Court must also include the forfeiture order, directly or by reference, in the judgment."

## Denial of Federal Benefits

81. **Statutory Provisions:** At the discretion of the Court, the defendant, having been convicted of a first drug distribution offense, shall be ineligible for any or all federal benefits for up to five years after such conviction, pursuant to 21 USC 862(a)(1)(A).

82. **Guideline Provisions:** The Court, pursuant to 21 USC 862, may deny the eligibility for certain federal benefits of any individual convicted of distribution or possession of a controlled substance, pursuant to §5F1.6.

## PART E. FACTORS THAT MAY WARRANT DEPARTURE

83. The probation officer has not identified any factors that would warrant a departure from the applicable sentencing guideline range.

## PART F. FACTORS THAT MAY WARRANT A SENTENCE OUTSIDE OF THE ADVISORY GUIDELINE SYSTEM

84.     The probation officer has not identified any factors that would warrant a sentence outside of the advisory guideline range.

Respectfully Submitted,

Michael J. Fitzpatrick
Chief U.S. Probation Officer

By:    Stephanie M. Dunne
USPO

Approved:

Thomas J. McCarthy
SUSPO

Marshall, Jordan                           16              P1612701 - Dunne, Stephanie

## ADDENDUM TO THE PRESENTENCE REPORT

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK
### UNITED STATES V. JORDAN MARSHALL, DKT. 0208 1:15CR00521-001 (PAE)

### REVISIONS

1. Paragraph 54 has been updated to include substance abuse treatment records.

2. Paragraph 59 has been amended to include school records.

3. Paragraphs 63 now includes employment records furnished by defense counsel.

### OBJECTIONS

### By the Government

The Government does not have any objections.

### By the Defendant

Defense counsel submitted the following objections to the presentence report in an email dated April 1, 2016:

Objection: Defense counsel objects to paragraph 48 of the presentence report, which describes the Probation Officer's impression of the defendant during the presentence interview.  Counsel disagrees with the Probation Officer's view that Marshall "displayed an overall poor attitude" and "appeared unforthcoming and disrespectful at times."

Response:  The aforementioned paragraph represents the Probation Officer's view of the defendant at that time and is not subject to re-interpretation.  According to notes taken during the interview which took place on February 10, 2016, Marshall appeared to resist fully engaging in the interview and was not generally forthcoming with information. Defense counsel's comment is noted herein; however, no change has been made to the presentence report as a result of this objection.

Objection:  Defense counsel objects to paragraph 59 of the presentence report, which indicates that the defendant failed to elaborate or explain himself further regarding why he dropped out of school.  Defense counsel asserts that she does not recall the Probation Officer asking for additional information.

Marshall, Jordan                                     17                        P1612701 - Dunne, Stephanie

<u>Response</u>:  According to the Probation Officer's notes, as well personal recollection of the interview, Marshall was asked to explain the statement that he "had a lot going on" as the reason why he quit school; he either could not or would not articulate exactly what that meant.  Defense counsel's comment is noted herein; however, no change has been made to the presentence report as a result of this objection.

Respectfully Submitted,

Michael J. Fitzpatrick
Chief U.S. Probation Officer

By:     Stephanie M. Dunne
         USPO

Approved:

Thomas J. McCarthy
SUSPO

Marshall, Jordan                          18                    P1612701 - Dunne, Stephanie

## SENTENCING RECOMMENDATION

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
## UNITED STATES V. JORDAN MARSHALL, DKT. 0208 1:15CR00521-001 (PAE)

TOTAL OFFENSE LEVEL                        <u>21</u>
CRIMINAL HISTORY CATEGORY                  <u>I</u>

|  | <u>Statutory Provisions</u> | <u>Guideline Provisions</u> | <u>Recommended Sentence</u> |
|---|---|---|---|
| **CUSTODY:** | 20 years maximum | 37 to 46 months | **37 months** |
| **SUPERVISED RELEASE:** | Minimum of 3 years up to life | 3 years | **3 years** |
| **PROBATION:** | 1 to 5 years | Ineligible | **Not Recommended** |
| **FINE:** | $1,000,000 maximum | $7,500 to $1,000,000 | **Not Recommended** |
| **RESTITUTION:** | Not Applicable | Not Applicable | **Not Applicable** |
| **FORFEITURE:** | Unspecified | Unspecified | **Unspecified** |
| **SPECIAL ASSESSMENT:** | $100 | $100 | **$100** |

<u>**Justification:**</u>

Jordan Marshall stands before the Court awaiting sentence after being convicted of Conspiracy to Distribute and Possess with Intent to Distribute Crack.

The instant offense represents the defendant's second known arrest and criminal conviction.  Marshall was previously convicted of Disorderly Conduct, for which the underlying criminal activity involved his theft of brass fittings from a firehouse located inside of a Bronx building.  He received a Conditional Discharge and one day of community service.

In the instant offense, on March 9, 2015, in Manhattan, Marshall sold approximately 50 grams of crack to a cooperating witness (CW) working with the DEA, in exchange for $2,450.  Both Marshall and his co-defendant, Lawrence Lewis, were drug suppliers who were separately recruited by co-conspirator, Gene Rodriguez, to provide crack to the CW on different occasions.  Marshall and Lewis did not engage in any known jointly-undertaken criminal activity.

Marshall, Jordan                                    19                    P1612701 - Dunne, Stephanie

Although the defendant declined to make a statement regarding his involvement in the offense during the presentence interview, it appears that he was motivated by monetary gain.

Jordan Marshall is 20 years old, and he has a GED and some college education.  The defendant was last employed as a temporary stock clerk, but was laid-off in January 2015.  Prior to his remand, Marshall resided with his parents and sister in an apartment in New York, NY.

We believe that a sentence of 37 months' imprisonment, as contemplated by the guidelines, is appropriate in this case to both punish the defendant for his criminal behavior and to deter him from committing further crimes.  Marshall is a recidivist who committed the instant offense within only a few years of his prior conviction, and is responsible for conspiring to distribute a significant amount of crack.  Following his arrest, the defendant demonstrated a continued pattern of non-compliance while released on bail, thereby showing that he is presently unfit for community-based supervision.  We do not any mitigating circumstances which warrant a variance in this case.  It is our hope that following his release from custody, Marshall will learn to become a law-abiding member of society.  It is noted that the defendant comes from an intact family unit and appears to have the full support of his parents.

We also respectfully recommend a three-year term of supervised release, which is the minimum required by statute, and which we believe will serve to effectively monitor the defendant within the community and to ensure that he is in compliance with the conditions of his release.  The defendant is also required to comply with an unspecified joint and several forfeiture order and to pay the mandatory $100 special assessment.  As such, we recommend a special financial condition.  Additionally, as the offense involved the unlawful possession of narcotics, we believe that a search condition should be imposed.

*Pursuant to the Violent Crime Control and Law Enforcement Act of 1994, for offenses committed after September 13, 1994, the court shall require that all offenders on probation, parole, or supervised release submit to one drug test within fifteen days of commencement of probation, parole or supervised release and at least two drug tests thereafter for use of a controlled substance, unless ameliorated or suspended by the court due to its determination that the defendant poses a low risk of future substance abuse as provided in 18 USC 3563 (a) (5) / 3583 (d).*

## Drug Risk Analysis

Marshall admitted to addictions to marijuana, prescription painkillers, and cocaine prior to his arrest, and thereafter failed to attend treatment as directed and continued to use drugs while on pretrial supervision.  As such, we believe that the defendant poses a significant risk of future substance abuse and recommend a special condition of substance abuse treatment and testing.

Marshall, Jordan                                      20                          P1612701 - Dunne, Stephanie

## Recommendation

We respectfully recommend that Your Honor impose a sentence of 37 months' imprisonment to be followed by three years' supervised release.

## Mandatory Conditions

If a period of probation/supervised release is ordered, the following conditions are mandatory:

> The defendant shall not commit another federal, state, or local crime.

> The defendant shall not illegally possess a controlled substance.

> The defendant shall not possess a firearm or destructive device.

> The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

> The defendant shall cooperate in the collection of DNA as directed by the probation officer.

## Standard and Special Conditions

The standard conditions of supervision (1-13) are recommended with the following special conditions:

The defendant will participate in an outpatient treatment program approved by the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The defendant shall contribute to the cost of services rendered based on the defendant's ability to pay and the availability of third-party payments. The Court authorizes the release of available drug treatment evaluations and reports, including the presentence investigation report, to the substance abuse treatment provider.

The defendant shall submit his/her person, residence, place of business, vehicle, and any property or electronic devices under his control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the conditions of the defendant's probation/supervised release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. The defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

The defendant shall provide the probation officer with access to any requested financial information.

The defendant is to report to the nearest Probation Office within 72 hours of release from custody.

Marshall, Jordan                          21                    P1612701 - Dunne, Stephanie

If the defendant is sentenced to any period of supervision, it is recommended that the defendant be supervised by the district of residence.

**Special Assessment**

It is further ordered that the defendant shall pay to the United States a special assessment of $100, which shall be due immediately.

**Fines**

We believe that the defendant does not have the ability to pay a fine and recommend that the fine in this case be waived.  The factors in 18 USC 3572 were considered in formulating this recommendation.

**Forfeiture**

The defendant shall forfeit his interest in the following property to the United States:

All property that constituted or was derived from proceeds traceable to the commission of the offense, for which he is jointly and severally liable.

Pursuant to Rule 32.2, "[t]he Court must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing.  The Court must also include the forfeiture order, directly or by reference, in the judgment."

**Voluntary Surrender:**

The defendant has been detained without bail since his remand to custody on January 18, 2016.  He is not a candidate for voluntary surrender because of the provisions found in 18 USC 3143(a)(2).

Respectfully Submitted,

Michael J. Fitzpatrick
Chief U.S. Probation Officer

By:    Stephanie M. Dunne
USPO

Approved:

Thomas J. McCarthy
SUSPO